# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AIR TRANSPORT ASSOCIATION OF AMERICA, INC.** *d/b/a* **AIRLINES FOR AMERICA**, *et al.*, <br><br> **Plaintiffs**, <br><br> **v.** <br><br> **UNITED STATES DERPARTMENT OF AGRICULTURE**, *et al.*, <br><br> **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **Civil Action No. 16-919 (RMC)** |

## MEMORANDUM OPINION

The Air Transport Association of America, Inc. and the International Air Transport Association challenged a Final Rule issued by the Animal and Plant Health Inspection Service (APHIS) within the United States Department of Agriculture. The Final Rule set fees for checking international aircraft for unwanted pests, including an additional amount for a "reserve." The Court agreed that the adoption of the Final Rule as to the reserve was problematic and remanded that portion of the Final Rule to APHIS for further rulemaking. Now the Plaintiffs move to reconsider the Court's order, particularly the remand of the reserve portion of the Final Rule without vacatur. They also ask the Court to impose a schedule for further rulemaking by the agency and ask that the Court certify part of its opinion for interlocutory review. Specifically, Plaintiffs ask the Court to certify for immediate review the question of whether APHIS violated the Administrative Procedure Act when it determined to apply the fee for commercial aircraft to passenger aircraft without explaining inconsistencies in the rulemaking record.

The Court finds that:  (1) the reserve portion of the Final Rule is properly remanded without vacatur; (2) a deadline and schedule for periodic status reports shall be imposed; and (3) certification for interlocutory appeal is not warranted.  Thus, the Court will grant in part and deny in part Plaintiffs' motion to amend the March 28, 2018 Order.

## I.  BACKGROUND

The facts were discussed in detail in the Court's March 28, 2018 Opinion in this case, and will only be repeated to the extent that they are relevant to the pending motion.  *See Air Transp. Ass'n of Am., Inc. v. USDA*, 303 F. Supp. 3d 28, 33-38 (D.D.C. 2018).  In short, Congress granted APHIS the authority to inspect "persons and vessels entering the customs territory of the United States for possible infection or infestation with pests and diseases that threaten the resident flora and fauna."  *Air Transp. Ass'n*, 303 F. Supp. 3d at 33; *see also* Plant Protection Act, 7 U.S.C. § 7701, *et seq.* (2010); 7 C.F.R. § 330.105.  Congress enacted the Food, Agriculture, Conservation, and Trade Act (FACT Act) in 1990, "authoriz[ing] APHIS to collect user fees for certain agricultural quarantine and inspection (AQI) services."  *Air Transp. Ass'n*, 303 F. Supp. 3d at 34.  When the FACT Act was amended as part of the Federal Agricultural Improvement Act of 1996, Congress revised the section describing the authorized fees and created a temporary Agricultural Quarantine Inspection User Fee Account in the Department of Treasury.  *See* Pub. L. No. 104-127, § 917, 110 Stat. 888, 1187-88 (1996) (codified at 21 U.S.C. § 136a (2013)).  Under § 136a(a)(1)(C), the Secretary of Agriculture was authorized to assess fees to "maintain a reasonable balance in the Agricultural Quarantine Inspection User Fee Account" for FY96 through FY02.  21 U.S.C.

§ 136a(a)(1)(C).  APHIS has explained that "[t]he reserve fund ensures that AQI program operations continue without interruption when service volumes fluctuate due to economic conditions or other circumstances."  *Air Transp. Ass'n*, 303 F. Supp. 3d at 35.

On April 25, 2014, APHIS submitted a proposed new rule for notice and comment as part of an ongoing attempt to adjust fees to cover the costs of the AQI program.  *See id.* at 37.  The October 29, 2015 Final Rule decreased the air passenger fee to $3.96 and increased the commercial aircraft fee to $225.  *See id.*  Plaintiffs objected to the Final Rule and filed their Complaint on May 14, 2016, alleging four Administrative Procedure Act (APA), 5 U.S.C. § 500, *et seq.* (2012), violations.  *See* 5 U.S.C. § 706(2)(A); *Air Transp. Ass'n*, 303 F. Supp. 3d at 37-38.

The Court denied Plaintiffs' motion for summary judgment as to Counts I, II, and IV, *see Air Transp. Ass'n*, 303 F. Supp. 3d at 57; and granted Plaintiffs' motion as to Count III, agreeing that APHIS violated the FACT Act by maintaining a reserve fund after the expiration of its statutory authority in 2002 under § 136a(a)(1)(C).  *See id.* at 51-52.  The Court concluded that "[w]hether there is authority to be found elsewhere, reliance on expired statutory language was unreasonable and therefore arbitrary and capricious," and remanded to the agency for "further consideration and possible rulemaking by APHIS."  *Id.* at 52.

Plaintiffs now move under Rule 54(b) to amend the Court's order to:

(1) Remand with vacatur the reserve portion of the Final Rule;

(2) Require APHIS to respond to the Court's remand Order by publishing a new or amended rule for public notice and comment, or by taking other action, by August 31, 2018, and to require status reports from the parties every 90 days during the course of the remand period; and

(3) Certify for interlocutory appeal under 28 U.S.C. § 1292(b) whether APHIS's application of the commercial aircraft fee to

3

> passenger aircraft satisfies the requirements of the APA given the inconsistencies in the agency's expert report from Grant Thornton and the Final Rule and APHIS's failure to explain these discrepancies in the rulemaking.

*See* Pls.' Mot. to Amend Order (Mot.) [Dkt. 38] at 1. The motion is ripe for decision.[1]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) governs a court's reconsideration of non-final, or interlocutory, orders. *See Murphy v. Exec. Office for U.S. Att'ys*, 11 F. Supp. 3d 7, 8 (D.D.C. 2014), *aff'd*, 789 F.3d 204 (D.C. Cir. 2015). An order granting a motion for summary judgment in part is an interlocutory order. *Cuban v. SEC*, 795 F. Supp. 2d 43, 48 (D.D.C. 2011) ("Court action that terminates fewer than all claims in a case is considered interlocutory.") (citing *Langevine v. District of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997)). Rule 54(b) provides that an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

A motion for reconsideration under Rule 54(b) may be granted "as justice requires." *United States v. Dynamic Visions, Inc.*, 321 F.R.D. 14, 17 (D.D.C. 2017) (quoting *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)). A court may consider whether it "patently misunderstood a party, made a decision beyond the adversarial issues presented to the court, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court." *Id*. (internal quotation marks and citations omitted).

---

[1] *See* Defs.' Opp'n to Pls.' Mot. to Amend Order (Opp'n) [Dkt. 39]; Pls.' Reply Mem. of Law in Supp. of Pls.' Mot. to Amend (Reply) [Dkt. 40].

# III.    ANALYSIS

## A.  Remand of Reserve Portion of Final Rule

Plaintiffs move to amend the March 28, 2018 Order so that the reserve portion of the Final Rule is vacated upon remand.  The APA requires that the reviewing court "hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2).  "An inadequately supported rule, however, need not necessarily be vacated."  *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993); *see also Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009) ("[V]acatur need not be the remedy for an invalidly adopted rule.").  In fact, this Circuit has "commonly remanded without vacating an agency's rule or order where the failure lay in lack of reasoned decisionmaking, but also where the order was otherwise arbitrary and capricious."  *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety and Health Admin.*, 920 F.2d 960, 966-67 (D.C. Cir. 1990) (citations omitted); *see also Checkosky v. SEC*, 23 F.3d 452, 465 (D.C. Cir. 1994) (Silberman, J., separate opinion) (noting that "[e]ven after condemning an agency action as arbitrary and capricious, we have recognized our remedial discretion not to vacate the agency decision").

The district court exercises its discretion to remand a rule with or without vacatur once it has found deficiencies in an agency's reasoning.  *See, e.g.*, *Advocates for Highway and Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1151 (D.C. Cir. 2005) ("While unsupported agency action normally warrants vacatur, this court is not without discretion.") (citations omitted).  Whether a court should vacate an unreasonable agency action on remand, or not, depends on:  (1) "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)" and (2) "the disruptive consequences of an interim change

that may itself be changed." *Allied-Signal*, 988 F.2d at 150-51 (quoting *Int'l Union*, 920 F.2d at 967).

If the first prong of the *Allied-Signal* analysis supports remand without vacatur, the second prong is "only barely relevant." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 282 F. Supp. 3d 91, 108 (D.D.C. 2017) (quoting *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1049 (D.C. Cir. 2002), *opinion modified on reh'g*, 293 F.3d 537 (D.C. Cir. 2002)). If there is "at least a serious possibility that the [agency] will be able to substantiate its decision on remand," then vacatur is not necessary. *Allied-Signal*, 988 F.2d at 151; *see also In re Core Commc'ns, Inc.*, 531 F.3d 849, 861 (D.C. Cir. 2008) (declining to vacate rule when there was a "non-trivial likelihood" that the agency had a valid legal basis for it).

Plaintiffs argue that the seriousness of the deficiencies of the Final Rule satisfy the first prong of *Allied-Signal* because APHIS relied on expired statutory authority in assessing the reserve fee, giving rise to a "fundamental procedural flaw." *See* Mem. of Law in Supp. of Pls.' Mot. to Amend Order Filed Mar. 28, 2018 (Mem.) [Dkt. 38-1] at 6. They add that even if APHIS can successfully locate the requisite authority elsewhere in the statute, it will still have to make material changes in its methodology for calculating the reserve fee, which will unrecognizably change the reserve portion of the Final Rule. *See* Reply at 5. Plaintiffs further maintain that vacating the reserve will cause only minimal disruption to the AQI program. *See* Mem. at 6-7.

APHIS responds that there is a "serious possibility" it will be able to substantiate the reserve fee on remand because it did not exceed its statutory authority, but only made a citation error. *See* Opp'n at 2-3. Additionally, APHIS emphasizes that vacatur would cause

serious disruption to the AQI program and risk "biological and economic harm for the United States." *See id.* at 3.

"When an agency may be able readily to cure a defect in its explanation of a decision, the first factor in *Allied-Signal* counsels remand without vacatur." *Heartland*, 566 F.3d at 198. Defendants submit that "there is, at a minimum, a 'serious possibility' that APHIS will be able to provide statutory justification for the reserve fund portion of the 2015 rule on remand." Opp'n at 4.

In granting summary judgment to Plaintiffs on Count III, the Court noted that the section of the FACT Act cited in the rulemaking to authorize maintenance of a reserve account was improper—and APHIS conceded the point. *Air Transp. Ass'n*, 303 F. Supp. 3d at 51-52. While APHIS attempted in its briefing to justify the reserve account through § 136a(a)(1)(B) of the FACT Act, the Court did not decide whether its argument was correct because that was the not the justification in the rulemaking. *See id.* at 50-52. Plaintiffs now contend that the text of § 136a(a)(1)(B) cannot support the construction APHIS intends to give it, in order to justify the reserve, but that argument is premature. All that is necessary at this point is that APHIS has adequately shown that it is "conceivable" that on remand it can "develop a reasoned explanation" of its statutory authority for charging a reserve fee. *Allied-Signal*, 988 F.2d at 151.

Plaintiffs' argument that APHIS made a "fundamental flaw" in propounding the Final Rule puts too much weight on the admitted error in these circumstances. A fundamental flaw has been found "when an agency's explanation of the basis and purpose of its rule is so inadequate that the reviewing court cannot evaluate it." *Heartland*, 566 F.3d at 199 ("Failure to provide the required notice and to invite public comment . . . is a fundamental flaw that 'normally' requires vacatur of the rule."); *see also Mendoza v. Perez*, 72 F. Supp. 3d 168, 175

(D.D.C. 2014) (holding that the "failure of the Federal Defendants to engage in notice and comment is a fundamental procedural flaw").  While APHIS acted unreasonably when it relied on expired statutory authority to justify the reserve fee, such a deficiency in these circumstances does not rise to the level of a "fundamental flaw" in which APHIS would have "'little or no prospect' of curing the defect in the rule." *Heartland*, 566 F.3d at 197 (quoting *Ill. Pub. Telecomms. Ass'n v. FCC*, 123 F.3d 693, 693-94 (D.C. Cir. 1997)).  Rather, the agency represents that there is support for its authority to set a reserve fee elsewhere in the statute.

The disruption to the AQI program that might occur if the portion of the Final Rule setting a reserve fee were vacated is legally irrelevant:  "though the disruptive consequences of vacatur might not be great, the probability that the [agency] will be able to justify retaining the [Rule] is sufficiently high that vacatur of the Rule is not appropriate." *Fox*, 280 F.3d at 1049.  Conversely, APHIS raises legitimate concerns that vacatur could compromise environmental safety and lead to negative economic consequences.  *See* Opp'n at 7-9; *see also* Declaration of Osama El-Lissy [Dkt. 39-1] ¶ 12; *North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008) (noting remand without vacatur is appropriate if it is necessary to "temporarily preserve the environmental values" covered by the rule itself); *Resolute Forest Prods., Inc. v. USDA*, 130 F. Supp. 3d 81, 105 (D.D.C. 2015) ("Cases that involve fee collection or payment distribution, moreover, are particularly appropriate for remand without vacatur.  This is especially true in the case of agency collection of fees, including those involving the Department of Agriculture.") (internal quotation marks and citation omitted).

APHIS has represented that there is a "significant possibility" that it will be able to explain its authority to collect a reserve fee on remand, which is sufficient for the Court to

remand for further rulemaking without vacatur. *See Williston Basin Interstate Pipeline Co. v. FERC*, 519 F.3d 497, 504 (D.C. Cir. 2008).

### B. Schedule for New or Amended Rule

Plaintiffs further move to amend the March 28, 2018 Order to set a schedule for APHIS to complete notice and comment rulemaking. Plaintiffs ask the Court to order that a new or amended rule be published for public notice and comment by August 31, 2018 and that the parties submit status reports every 90 days. APHIS protests that such a rapid schedule for formal rulemaking is unrealistic.

The Court well appreciates Plaintiffs' concern that "the agency, if unchecked, may take years to promulgate a new proposed rule or take other action." Mem. at 8; *see also Nat. Res. Def. Council v. EPA*, 489 F.3d 1250, 1264 (D.C. Cir. 2007) (Randolph, J., concurring) ("A remand-only disposition is, in effect, an indefinite stay of the effectiveness of the court's decision and agencies naturally treat it as such."). However, the Court also recognizes that formal rulemaking is a time-consuming process and August 31, 2018 is an unrealistic deadline. Therefore, the Court will require APHIS to complete notice and comment rulemaking no later than 18 months from the date of the Order issued contemporaneously with this Memorandum Opinion. APHIS will also be ordered to submit status reports every 90 days.

### C. Certification for Interlocutory Appeal

Plaintiffs also ask the Court to certify for interlocutory review the question of "whether APHIS's application of the commercial aircraft fee to passenger aircraft satisfies the requirements of the APA given the inconsistencies in the Grant Thornton report and the Final Rule and APHIS's failure to explain these discrepancies in the rulemaking." *See* Mot. at 1 (citing 28 U.S.C. § 1292(b)). Immediate review is appropriate, according to Plaintiffs, because:

(1) there is a controlling question of law in the Court's finding that the agency's failure to explain the inconsistencies in its expert consultant's report was not an incurable deficiency; (2) there is a significant difference of opinion within the D.C. Circuit as to whether an agency may explain discrepancies in post-hoc litigation that were not explained in rulemaking; and (3) resolution of this issue would materially advance this case and promote efficiency.

APHIS responds that there is no basis for an interlocutory appeal: (1) there is no controlling question of law because a reversal by the Circuit would resolve only one APA claim in plaintiffs' favor and would not necessarily change the relief already ordered; (2) the decision does not conflict with judicial precedent as it gives the proper deference to the agency's decision-making; and (3) for purposes of this litigation, the issue has been conclusively decided and consolidating all appeals would be more efficient.

A district court may certify an order for interlocutory appeal if it concludes that it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "A party seeking certification pursuant to § 1292(b) must meet a high standard to overcome the 'strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals.'" *Judicial Watch, Inc. v. Nat. Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 20 (D.D.C. 2002) (quoting *United States v. Nixon*, 418 U.S. 683, 690 (1974)).

The party requesting certification has the burden of establishing all three elements under § 1292(b). *See APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 95 (D.D.C. 2003). As such, "the law is clear that certification under § 1292(b) is reserved for truly exceptional cases." *In re Vitamins Antitrust Litig.*, No. 99-197, 2000 WL 673936, at *2 (D.D.C.

Jan. 27, 2000) (citing *Tolson v. United States*, 732 F.2d 998, 1002 (D.C. Cir. 1984) ("Section

1292(b) is meant to be applied in relatively few situations and should not be read as a significant

incursion on the traditional federal policy against piecemeal appeals.")); *see also Philipp v. Fed.

Republic of Ger.*, 253 F. Supp. 3d 84, 88 (D.D.C. 2017) (certifying for interlocutory appeal on

issue of whether party had sovereign immunity and was outside the court's jurisdiction); *Al

Maqaleh v. Gates*, 620 F. Supp. 2d 51, 55-56 (D.D.C. 2009) (certifying for interlocutory appeal

on issue of subject-matter jurisdiction).

   "The threshold for establishing the substantial ground for difference of opinion

with respect to a controlling question of law . . . is a high one." *Judicial Watch*, 233 F. Supp. 2d

at 19 (internal quotations omitted). "A substantial ground for difference of opinion is often

established by a dearth of precedent within the controlling jurisdiction and conflicting decisions

in other circuits." *APCC Servs.*, 297 F. Supp. 2d at 97. While Plaintiffs disagree with the

Court's ruling as to the significance of the inconsistencies between the Grant Thornton report

and the explanation of the commercial aircraft fee in the Final Rule, "mere disagreement, even if

vehement, with a court's ruling does not establish a 'substantial ground for difference of opinion'

sufficient to satisfy the statutory requirements for interlocutory appeal." *Vitamins Antitrust

Litig.*, 2000 WL 673936, at *3 (quoting *First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1116

(D.D.C. 1996)).

   "[A] controlling question of law is one that would require reversal if decided

incorrectly or that could materially affect the course of litigation with resulting savings of the

court's or the parties' resources." *Judicial Watch*, 233 F. Supp. 2d at 19 (quoting *Vitamins

Antitrust Litig.*, 2000 WL 673936, at *2). However, "[t]he resolution of an issue need not

necessarily terminate an action in order to be controlling, but instead may involve a procedural

determination that may significantly impact the action." *APCC Servs.*, 297 F. Supp. 2d at 96 (citations and internal quotations omitted).

An immediate appeal would materially advance the disposition of the litigation if it would "conserve judicial resources and spare the parties from possibly needless expense" if the Court's ruling was reversed. *Id.* at 100 (citing *Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720, 728 (S.D. Tex. 2002)). If the Court were to certify an untimely appeal in this case, however, it would delay APHIS's promulgation of a new or revised rule and cause all parties, including the regulated industry, to incur greater expense.

The Court finds that Plaintiffs have failed to meet their burden of "showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment." *Judicial Watch*, 233 F. Supp. 2d at 20 (quoting *Virtual Def. and Dev. Int'l, Inc. v. Republic of Moldova*, 133 F. Supp. 2d 9, 22 (D.D.C. 2001)). The Court will deny Plaintiffs' motion to certify for immediate review.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Plaintiffs' Motion to Amend, Dkt. 38. The Court will order APHIS to complete notice and comment rulemaking in no more than 18 months from the date of the Order in this case, *i.e.*, no later than January 2020, and require status reports every 90 days. A memorializing Order accompanies this Memorandum Opinion.

Date: July 17, 2018                                    _____/s/_____
                                                       ROSEMARY M. COLLYER
                                                       United States District Judge